# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| TRACY JACKSON, Administratrix of the Estate of Gwendolyn M. Guyton, Deceased, | : : : : |
| **Plaintiff**, | : : |
| v. | :  Civil Action No. 7:06-cv-76 (HL) |
| AMERICAN GENERAL FINANCIAL SERVICES, INC. and, MERIT LIFE INSURANCE COMPANY, | : : : : : |
| **Defendants**. | : |

## ORDER

This matter came before the Court for hearing on April 19, 2007. After hearing from the parties, and as more fully set forth below, the Court denies Defendants' Motion to Compel Arbitration and Stay Further Proceedings (Doc. 2), denies Plaintiff's Motion to Disqualify Attorneys for Defendants (Doc. 5), and finds as moot Plaintiff's Motion for Order Compelling Discovery (Doc. 7) and declines to award attorney's fees for the filing of the Motion.

### I. Allegations of the Complaint

The complaint alleges the following. On October 12, 2004, Gwendolyn Guyton borrowed $63,029.00 from American General Financial Services ("AmGen"), using a home equity line of credit. The line of credit was secured by a deed to secure debt on Ms. Guyton's home in Valdosta, Georgia.

As a condition of the loan, AmGen required Guyton to obtain group credit life

insurance.[1] Guyton's credit life insurance was obtained from Merit Life Insurance Company ("Merit"). Merit and AmGen are subsidiaries of American International Group. An AmGen employee, acting as an agent for Merit, prepared the application for life insurance for Guyton, which Guyton then signed. AmGen was named as the beneficiary on the policy. The premiums on the Merit life insurance policy were paid out of the monthly payments Guyton made on the AmGen equity loan.

On January 2, 2005, Guyton died. Tracy Jackson, as the Administratrix of the Estate of Guyton, called upon AmGen to file a claim for the credit life insurance benefits, in order that the unpaid balance on the loan would be paid off. According to Jackson, AmGen refused to file a claim.[2] Jackson, as Administratrix, then submitted a claim to Merit for the credit life insurance benefits, but Merit denied the claim. Thereafter, AmGen initiated foreclosure proceedings for the unpaid balance. On March 22, 2006, Jackson filed the complaint at issue here.

## II. Procedural History

Jackson filed her complaint in the Superior Court of Lowndes County, Georgia, seeking payment of $63,029.00 for benefits due under the credit life insurance policy and praying for judgment in an amount not to exceed $74,999.00. She named as Defendants AmGen and Merit. AmGen and Merit are represented by the same attorneys. Despite Jackson's express limitation

---

[1] AmGen denies that Guyton was required to obtain group credit life insurance as a condition of the loan. (Defs.' Answer ¶ 6.)

[2] AmGen claims that it submitted a claim to Merit for the credit life insurance benefits but that the claim was denied by Merit (Defs.' Answer ¶ 13.)

on the amount of damages sought, Defendants removed the case to this Court. The Court promptly remanded the matter to the Superior Court of Lowndes County, Georgia, because the case failed to meet the amount in controversy requirement. On July 14, 2006, Jackson amended her complaint to add Georgia RICO violations. Shortly thereafter, on August 14, 2006, Defendants again removed the case to this Court, this time alleging that the addition of the RICO claims, which provide for treble damages, allowed them to satisfy the amount in controversy requirement. Plaintiff does not contend that this Court lacks subject matter jurisdiction over Plaintiff's complaint, as amended.

At the time Defendants removed to this Court there were three Motions pending: Defendants' Motion to Compel Arbitration and Stay Further Proceedings (Doc. 2); Plaintiff's Motion to Disqualify Attorneys for Defendants (Doc. 5); and Plaintiff's Motion for Order Compelling Discovery (Doc. 7). After filing the Motion to Compel Arbitration and Stay Further Proceedings, Defendants took the position that they were not obliged to engage in discovery. Defendants' refusal to engage in discovery thus prompted Plaintiff's Motion for Order Compelling Discovery. Because the parties were at an impasse as to how to proceed, the Court entered an order staying the case until it could resolve the pending Motions.

**III. Defendants' Motion to Compel Arbitration and Stay Further Proceedings**

AmGen and Merit have moved to compel binding arbitration on the basis of an arbitration clause contained in the line of credit agreement entered into by Guyton and AmGen. In support of their Motion, Defendants point out several things. First, they contend that there was an arbitration provision set out in capital letters and bold print such that Guyton should be

bound by it. Second, the Federal Arbitration Act authorizes arbitration agreements such as the one at issue here. Third, federal law favors enforcement of arbitration agreements. And, fourth, Plaintiff's claims here come within the scope of the arbitration agreement.

Plaintiff offers several arguments in opposition to compelled arbitration. For example, she contends that Defendants cannot compel arbitration because they did not sign the arbitration agreement. She also argues that the arbitration agreement is unenforceable under the UCC. She also argues that her claim involves a contract of insurance, and that Georgia law prohibits arbitration clauses in insurance agreements. In addition, she argues that the arbitration agreement is per se unconscionable as it violates public policy in Georgia.

There is, as Defendants argue, an arbitration clause contained in the American General Home Equity Line of Credit Agreement ("Credit Agreement"). Following nine pages of small print, typed in all capitals and placed in a box, is this statement:

> BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.

(Compl. Ex. A.)[3]

---

[3] The print size used in this Order when quoting from the Credit Agreement is not intended to represent the print size used in the actual document. The actual document is not available for review. The only copy of the document in the record is that attached as Exhibit A to the complaint. The print size shown in that document is significantly smaller than that used here.

The Arbitration Agreement and Waiver of Jury Trial ("Arbitration Agreement"), which is referenced in the foregoing paragraph, takes up all of page 7 and most of page 8 of the Credit Agreement. It is printed in the same typeface as the rest of the Credit Agreement, and includes the following language:

> Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
> My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender . . . .

(Compl. Ex. A.)

A separate paragraph in the Arbitration Agreement and Waiver of Jury Trial, entitled "COVERED CLAIMS AGAINST THIRD PARTIES," also set out in the same typeface as the rest of the Credit Agreement, includes the following language

> The Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of the affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender; any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company.

(Compl. Ex. A.)[4]

---

[4] In the same paragraph, the Arbitration Agreement, which is already remarkably broad, also extends to non-affiliated third parties with the following language:

> In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party,

Defendants rely on the foregoing language in the Credit Agreement, along with Guyton's initials on each page and her signature on page 10, to support their contention that the Arbitration Agreement controls and, therefore, they are entitled to an order staying this action and compelling arbitration.

The Federal Arbitration Act ("FAA"), as reenacted by Congress in 1947, includes the following language:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract.

9 U.S.C.A. § 2 (West 1999). Courts construing the FAA have concluded that it was intended "to reverse longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S. Ct. 1647, 1651 (1991). Similarly, courts have "rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 89-90, 121 S. Ct. 513, 521 (2000) (quoting Rodrigues de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 481, 109 S. Ct. 1917, 1920 (1989)).

---

all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

(Compl. Ex. A.)

As suggested by the foregoing, the courts, in applying the FAA, have sought to put arbitration agreements on the same footing as other contracts.[5] Such treatment has not, however, placed arbitration agreements beyond the scrutiny of the courts. To the contrary, in fact: the FAA limits its reach, making arbitration agreements valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (West 1999). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656 (1996).

In this case, Plaintiff has raised, among other things, the contract defense of unconscionability. At this stage of the litigation, where no discovery has been undertaken, the Court cannot determine whether the arbitration agreement at issue here is valid. The parties are in disagreement as to numerous facts that could impact the Court's determination as to the validity of the arbitration agreement. As a result, the question of whether the arbitration agreement is valid, and therefore subject to a motion to compel arbitration, cannot be decided at this juncture and the parties should proceed to discovery. Therefore, Defendants' Motion to Compel Arbitration and Stay Further Proceedings (Doc. 2) is denied. Defendants may file another motion to compel arbitration after discovery has been completed, if appropriate.

---

[5] Defendants argue that "federal law strongly favors the arbitration of disputes and the enforcement of arbitration agreements." (Br. Supp. Defs.' Mot. Compel Arbitration at 10.) In the Court's view, Defendants overstate the case. Congress, with the passage of the FAA, has expressed its wishes that arbitration agreements be given fair consideration. Courts, being independent bodies, neither favor nor disfavor arbitration but, instead, seek to apply arbitration agreements uniformly and dispassionately, as with any other contract.

**IV.     Plaintiff's Motion to Disqualify Attorneys for Defendants**

Plaintiff maintains that a conflict of interest exists because the same attorneys represent both AmGen and Merit. She contends that the employee and agent for AmGen who prepared the Credit Agreement was also the employee and agent for Merit who secured the life insurance policy. Plaintiff argues that because she has a claim for fraud against AmGen, based on its failure to make a claim for the life insurance benefits, there is a conflict of interest in representing both AmGen and Merit.

Nothing offered by Plaintiff at this juncture persuades the Court that there is an inherent conflict in having the same attorneys represent both AmGen and Merit. Accordingly, Plaintiff's Motion to Disqualify Attorneys for Defendants (Doc. 5) is denied. However, because the Court is directing the parties to proceed with discovery, Plaintiff is authorized to file a new motion to disqualify, should discovery reveal additional information that would support a conflict of interest claim.

**V.     Plaintiff's Motion for Order Compelling Discovery**

Shortly after this case was filed, Defendants moved to compel arbitration and stay discovery. Defendants then took the position that because of the filing of the motion to stay, they were not obliged to participate in discovery. In response, Plaintiff filed the Motion for Order Compelling Discovery at issue here. The Court stayed the case until all pending issues could be resolved. Thus, the Court directed that no discovery, or anything else, would take place until the motions could be heard. The Court has now directed the parties to proceed with discovery. Accordingly, Plaintiff's Motion is moot insofar as it seeks to compel discovery. The

Court declines to award attorney's fees for the filing of the Motion.

**VI.     Conclusion**

The Court finds that Plaintiff's challenges as to the validity of the Arbitration Agreement cannot be determined until after discovery has been completed. Accordingly, Defendants' Motion to Compel Arbitration and Stay Further Proceedings (Doc. 2) is denied. Furthermore, Plaintiff has failed to persuade the Court that representation of both Defendants by the same attorneys presents a conflict of interest. Therefore, Plaintiff's Motion to Disqualify Attorneys for Defendants (Doc. 5) is denied. Finally, Plaintiff's Motion for Order Compelling Discovery (Doc. 7) is moot; the request for attorney's fees contained within the Motion is denied. The stay entered on August 22, 2006, is lifted.

**SO ORDERED**, this the 26th day of April, 2007.

*s/     Hugh Lawson*
**HUGH LAWSON, JUDGE**

mls